## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ESTATE OF JUANDRICKES PAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case no. 21-cv-4205 |
| | ) | |
| v. | ) | |
| | ) | Honorable Jonathan E. Hawley |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION TO MODIFY DISCOVERY SCHEDULE

Defendants, Nathan Hilliard, Brian Leffler, Mark Luster, Andrew Darmer, Craig Jones, Stacey Millizer, and Kyle Downing ("Defendants"), by and through their attorney, Kwame Raoul, Attorney General of Illinois, respectfully request, pursuant to Fed. R. Civ. P. 16(b)(4), that this Court modify the scheduling order and reopen discovery for the limited purpose of allowing Defendants to supplement their Rule 26(a)(1) disclosures. In support thereof, Defendants state as follows:

### BACKGROUND

1.      Plaintiff brought this cause under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment after Decedent, an inmate formerly in custody at the Hill Correctional Center, hanged himself to death in his cell at some point on the morning of On December 27, 2019. *See* ECF No. 1.

2.      Plaintiff alleges that Defendants Luster, Darmer, Jones, Millizer, and Downing were deliberately indifferent when they failed to cut him down from his

ligature and perform lifesaving measures. *Id.*

3.    Defendants claim that the Decedent appeared to be clearly deceased when he was discovered and, as such, they secured the area as a crime scene according to Illinois Department of Corrections' policies and procedures. *See* ECF No. 91, Defendants' Statement of Undisputed Material Facts ¶¶19–43.

4.    The Decedent was first discovered hanging at approximately 7:23 am on the day in question.

5.    Immediately after the Decedent's body was discovered, the Illinois State Police ("ISP") were called to investigate, and they completed a Crime Scene Report, which included 75 photographs (50 of them thumbnail sized). *See* Exhibit 1 – ISP Crime Scene Report.

6.    According to the Crime Scene Report, all 75 photographs were taken between 10:00am–11:25am by ISP Investigator Daniel Erickson, using a camera model Canon Rebel T7i. *See* Exhibit 1 – ISP Crime Scene Report, bates no. 000057-58, 63.

7.    Counsel for Wexford Health Sources, Inc. and Gina Fox ("Wexford Defendants") obtained a copy of the Crime Scene Report by subpoena and disclosed the report to the parties in their initial disclosures on June 24, 2022. *See* Exhibit 2 – Wexford Defendants' R. 26(a)(1) disclosures. However, the ISP redacted 25 of the 75 photographs prior to producing the report to the Wexford Defendants. *See* Exhibit 1 – ISP Crime Scene Report, bates no. 000067-69, 72, 83-86, 88-96.

8.    As this matter approached the trial date of August 4, 2025, additional counsel for the Defendants was assigned to the matter. Assistant Attorney General Alan

Remy Taborga filed his notice of appearance on May 29, 2025. *See* ECF No. 107.

9.      In reviewing the voluminous record in this matter, AAG Taborga noticed that one of the 50 unredacted thumbnail photographs in the Crime Scene Report appeared to depict the Decedent hanging in his cell. None of the other 50 unredacted photographs depict the Decedent's body. *See* Exhibit 1 – ISP Crime Scene Report, bates no. 000067.

10.     Suspecting that the redacted photographs may also contain images of the Decedent, AAG Taborga contacted ISP on June 20, 2025, in order to obtain a copy of the unredacted report. AAG Taborga was informed by ISP that they could only produce the unredacted photographs in a criminal investigation and not for a civil matter.

11.     Upon further investigation, AAG Taborga learned that the Illinois Department of Corrections received full-sized digital copies of the 75 photographs taken by ISP. An Internal Security Investigator from IDOC provided a copy of the 75 photographs to AAG Taborga on July 15, 2025.

12.     Two days later, on July 17, 2025, Defendants disclosed these to the parties according to their continuing duty to supplement pursuant to Rule 26(e). *See* Exhibit 3 – Defendants' Rule 26(e) Disclosures; Certificate of Service at ECF No. 119.

13.     On July 29, 2025, the undersigned counsel and counsel for the Plaintiff participated in a telephone conference to discuss the disclosure of the additional 25 photographs, as well as Defendants' intention to introduce approximately 5 or 6 photographs into evidence at trial. Plaintiff's counsel stated his objection to the use of any photographs disclosed after the end of discovery.

14.    Fact discovery was completed on February 17, 2024. *See* Text Order entered on January 18, 2024.

15.    Defendants filed a motion for a hearing to resolve the discovery dispute. The Court referred the matter to the Magistrate Judge, Honorable Ronald L. Hanna, for resolution. *See* Text Order entered on August 6, 2025.

16.    At the hearing, Defendants argued that the introduction of 5 or 6 photographs should not be excluded at trial under Rule 37(c)(1) because the late disclosure was justified and harmless, and offered further argument on the four factors that guide the Court's discretion, asserting that there was no prejudice or surprise; that any prejudice could be cured since the trial was still 6 months away; that the trial date would not be affected; and that there was neither bad faith nor willfulness at play. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (articulating the standard for exclusion under R. 37).

17.    Following the hearing held on August 14, 2025, Judge Hanna found that the remedy sought, exclusion of evidence or witness testimony, is a trial-related evidentiary ruling for the trial judge to consider, which will be addressed with motions *in limine* in accordance with the Court's previously imposed scheduling order. *See* Text Order entered on August 15, 2025.

18.    Motions *in limine* are due December 31, 2025. Responses to motions *in limine* are due January 14, 2026.  The pretrial conference is scheduled for January 28, 2026. Trial is scheduled for February 9, 2026. *See* Text Order entered on July 8, 2025.

## LEGAL STANDARD

19.     This Court has authority to permit the disclosure of these 25 additional photographs under two separate rules, Rule 6(b)(1)(B) (which requires a showing of "excusable neglect") or Rule 16(b)(4) (which requires a showing of "good cause"). *See* Fed. R. Civ. P. 6(b)(1)(B), 16(b)(4). Defendants meet the standard in both instances.

20.     Rule 6 allows a district court to extend a deadline after it has passed if the party failed to act because of "excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B). A district court has considerable discretion in determining whether or not to reopen discovery. *Carpenter v. Scott,* 2016 WL 4468557, at *4 (C.D. Ill. Aug. 23, 2016) (citing *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015)). Discovery may be reopened where a party fails to act within a deadline "because of excusable neglect." *Id.*

21.     "Excusable neglect is understood to encompass situations in which the failure to comply with a … deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 394 (1993) (internal quotation omitted). The Court also explained the factors to consider for determining "excusable neglect":

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the [plaintiff], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* at 395 (citations omitted).

22.     Alternatively, this Court has discretion to reopen discovery by modifying

the Court's scheduling order. Under R. 16(b)(4), a party seeking to modify the scheduling order must show "good cause" for doing so. *See Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852-53 (7th Cir. 2022); *Ferguson v. Cook Cnty.*, 2025 U.S. Dist. LEXIS 70508, *1 (N.D. Ill., March 25, 2025). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment" of the scheduling order. *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (citations omitted).

**ARGUMENT**

**I. Defendants' failure to investigate the content of the redacted photographs and obtain unredacted copies within the fact discovery period was due to <u>excusable neglect</u>.**

22.    This Court should reopen discovery for a single day, pursuant to Rule 6(b)(1)(B), so that the Defendants can re-produce the 25 photographs as a supplement to their Rule 26(a)(1) disclosures.

23.    Courts routinely reopen discovery for such limited purposes, especially in cases involving newly discovered evidence. *See American Hardware Manufacturers Association v. Reed Elsevier, Inc.*, 2008 U.S. Dist. LEXIS 46902, *11-12 (N.D. Ill. 2008) (allowing the Defendant to depose a witness after discovery had closed because newly discovered documents revealed the witness's participation in underlying negotiations that were at issue).

24.    Just as in *American Hardware*, in this case we have the newly discovered evidence of 25 photographs depicting the Decedent hanging by his ligature.

25.    None of these photographs were in the custody of any of the Defendants.

And 24 of these photographs were redacted by the ISP, so the content of the images was unknown.

26.     The failure of Defendants' counsel to notice the one un-redacted, thumbnail-sized photograph in the Crime Scene Report that did depict the Decedent hanging was admittedly negligent.

27.     However, this negligence is excusable under Rule 6 when taking into account the circumstances of the omission and the relevant equitable factors, including the reason for the delay, whether it was within the reasonable control of the movant, the danger of prejudice to the Plaintiff, the potential impact on judicial proceedings, and the good faith of the movant.

28.     It should be noted at the outset that all parties, including Plaintiff, have been aware of the 25 redacted photographs since the Wexford Defendants produced the Crime Scene Report in June of 2022.

29.     No party, neither the Plaintiff nor the Wexford Defendants, addressed these redacted photographs during any meet and confer throughout the course of discovery.

30.     It was not until late May 2025, when a newly assigned attorney for the Defendants noticed the previously overlooked, difficult-to-discern, thumbnail-sized image in the Crime Scene Report showing Decedent hanging in his cell that Defendants began investigating the matter to obtain the unredacted photographs.

31.     These unredacted photographs were not in the possession of any of the Defendants or their attorneys during the period that fact discovery was open, and none of them was aware that Illinois Department of Corrections had received copies from the

ISP.

32.    Therefore, the reason for the delay was not within the reasonable control of the Defendants, but was instead caused by the non-party ISP, who produced redacted photographs in response to Wexford Defendants' subpoena and caused another month of delay by refusing to produce the photographs when AAG Taborga requested them on June 20, 2025.

33.    This is not a case where the movant offers no excuse or where the excuse is "so threadbare as to make the neglect inexplicable." *See Bowman v. Korte*, 962 F.3d 995,998 (7th Cir. 2020) (finding that the district court abused its discretion in allowing Defendants to file a motion for summary judgment after the filing deadline when no excuse was offered for the neglect).

23.    Unlike in *Bowman*, here there is a compelling rationale for the excuse, which is self-evident when considering the photograph that was overlooked, which is exceedingly small and bizarrely orientated in the Crime Scene Report.  *See* Exhibit 1 – ISP Crime Scene Report, bates no. 000067. If this photograph had been more clearly displayed in the Report, then Defendants' counsels would have recognized the need for obtaining the unredacted photographs immediately after receiving the report from the Wexford Defendants during fact discovery. This was neglect, to be sure, but it was <u>excusable</u> neglect.

34.    As will be set forth more fully below, there is minimal to no prejudice to the Plaintiff in allowing discovery to be extended/reopened for this limited purpose, since this dispute concerns such a small number of documents that Defendants intend to

introduce at trial (a handful of photographs). Again, motions *in limine* are not due until December 31, 2025, and the trial is not scheduled to begin until February 9, 2026.

35.     Furthermore, considering this expansive length of time until pretrial motions are due and trial is set to begin, it cannot plausibly be argued that this disclosure will impact judicial proceedings in any way.  With the trial approximately 6 months away, the parties have more than sufficient time to conduct any additional discovery if the Plaintiff so requires—time that will <u>not</u> be available if the Court defers its decision until motions *in limine* are fully briefed

36.     Nor can Plaintiff claim any meaningful surprise, because these photographs depict the Decedent exactly as he was described by some of the Defendants in their prior deposition testimony, including Defendant Luster. *See* ECF No. 91, Exhibit 7, Deposition of Luster, p. 93:18–94:12.

37.     Taking into account these circumstances, Defendants' failure to obtain and disclose these photographs while discovery was open was excusable.

38.     Furthermore, equity favors allowing discovery to be reopened for the limited purpose of disclosing these photographs so that some of them may be deemed admissible at trial. The 5 or 6 photographs that Defendants intend to introduce into evidence depict the Decedent exactly as he was described by some of the Defendants when they found him. They are highly probative and central to the defense that Defendants lacked a subjective awareness of any risk of harm, which would defeat the Eighth Amendment claim against them..

39.      Excluding these photographs by not reopening discovery to allow their

timely production would elevate the technicalities of civil procedure deadlines over and above the merits of the underlying claim, and this conflicts with the judicial preference of trying cases on the merits. *See, e.g., Webber v. Eye Corp.*, 721 F.2d 1067, 1071 (7th Cir. 1983) ("There is a well-established public policy favoring hearing cases on the merits."); *Beshear v. Weinzapfel*, 474 F.2d 127, 132 (7th Cir. 1973) ("[C]ourts have been created for the very purpose of trying cases on their merits.").

40.     Moreover, Plaintiff has already filed a motion *in limine* to bar autopsy photographs of the Decedent, arguing, inter alia, that they do not accurately reflect his condition at the time of discovery because they were taken so long afterwards. *See* ECF No. 112, motion *in limine* no. 18. Allowing introduction of the photographs from the Crime Scene Report would render that motion moot, as Defendants would not need to utilize the autopsy photographs in their defense.

**II. Defendants have <u>good cause</u> to reopen discovery because they acted diligently in producing the photographs and in seeking relief from the Court.**

41.     This Court should find good cause for modifying the Scheduling Order, pursuant to Rule 16, to allow the production of these 25 photographs because the Defendants were diligent in seeking this modification, which is the primary consideration for this Court to consider. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

42.     Courts routinely reopen discovery under Rule 16 based on a showing of good cause. *See Motton v. Ruark*, 2025 U.S. Dist. LEXIS 156543 *3 (C.D. Ill. Jul. 3, 2025) (finding good cause to reopen discovery so that Plaintiff's newly assigned counsel could amend Rule 26(a)(2) expert disclosures because Plaintiff was previously *pro se* and

detained, and any lack of diligence in searching for and hiring an expert was not his fault); *see also Lozier v. Holzgrafe*, 2023 U.S. Dist. LEXIS 180725 *5 (C.D. Ill. Oct. 6, 2023) (granting Counter-Defendant's motion to reopen discovery for the sole purpose of taking a non-party deposition because that individual could not be located during the discovery period).

43.     Defendants obtained copies of the 75 photographs from the Crime Scene Report, including the 25 that were previously redacted, on July 15, 2025.

44.     Defendants acted diligently—indeed could not have acted more diligently—when they disclosed these <u>within two days</u> after receiving them, on July 17, 2025.

45.     Defendants also acted diligently in attempting to address any possible issues that this late disclosure could pose for the Plaintiff by scheduling a meet-and-confer on July 29, 2025.

46.     And the Defendants continue to act diligently in bringing this motion to reopen discovery less than one week after Judge Hanna issued his order stating that relief under R. 37 was an evidentiary issue that must be addressed by the presiding trial judge through motions *in limine.*

**III. Reopening discovery for a single day to allow the disclosure of 25 additional photographs approximately six months before trial would cause Plaintiff minimal prejudice, if any.**

47.     Plaintiff cannot plausibly cry "prejudice" in receiving 25 additional photographs almost six months before trial.

48.     The scope of this additional discovery, which Plaintiff has had for over a

month already, is exceedingly small.

49.     And any additional discovery that Plaintiff needs to pursue concerning authenticity or foundation (e.g. by deposing the ISP investigator that took the photographs) can be easily resolved with nearly a half-year until this matter goes to trial.

50.     To the extent that Plaintiff's R.26(a)(2)(B) retained expert feels the need to revise his report in light of the additional photographs, there is also ample time for limited expert discovery to proceed to allow any revisions to the report as well as allowing Defendants to depose him about any such revisions.

51.     Undersigned counsel conferred with Plaintiff's counsel by email on August 21, 2025, asking if Plaintiff wanted to join the instant motion, but Plaintiff stated an objection on the basis that discovery is closed.

52.     Here the minimal burdens, if any, placed upon the Plaintiff come nowhere near outweighing the prejudice to Defendants in not being able to present this evidence.

53.     As stated above, these photographs are <u>highly probative</u>.  They depict the Decedent exactly as he was described by some of the Defendants when they found him. These photographs are therefore central to the defense that they lacked a subjective awareness of any risk of harm, which is a necessary element in a claim of deliberate indifference under the Eighth Amendment.

54.     Reopening discovery to allow the disclosure of these photographs, and to allow for any attendant discovery that Plaintiff may seek regarding them, is something that can be easily accomplished without disrupting the trial date scheduled for February 9, 2026—approximately a <u>half-year</u> away.

**IV. Alternatively, this Court should preclude Plaintiff from arguing in motions *in limine* that the 5 or 6 photographs from this production of 25 should be barred from evidence because of prejudice, surprise, or disruption to trial.**

55.    Plaintiff has stated an objection to the reopening of discovery and has indicated that he would oppose Defendants' use of any of the 25 photographs.

56.    In both the meet and confer on July 29, 2025, and during the hearing before Judge Hanna on August 14, 2025, Plaintiff's counsel has argued that this discovery issue should be resolved through motions *in limine*, which are due by December 31, 2025, with responses due by January 14, 2026.

57.    It is clear that Plaintiff's counsel is making a strategic decision to delay consideration of this discovery issue until the eve of trial, when it will be too late to cure any potential issues regarding prejudice, surprise, or disruption before trial.

58.    It is highly preferred that this Court re-open discovery so that the 25 photographs can be re-produced under R.26(a)(1).  Again, there are two separate Rules under which this Court has the discretion to do so: Rule 6 and Rule 16.

59.    However, in the alternative, this Court should preclude Plaintiff from arguing in any motions *in limine* or responses thereto that the introduction of 5 or 6 photographs at trial will cause prejudice, surprise, or disruption to the proceedings. The Court should not allow Plaintiff to rely on issues that were caused by his own requested delay in addressing this discovery dispute in a timely manner.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court reopen discovery for the limited purpose of supplementing Defendants' R. 26(a)(1) disclosures or, alternatively, that this Court preclude Plaintiff

from arguing in motions *in limine* that any of the 25 additional photographs should be barred from evidence because of prejudice, surprise, or disruption to trial, and grant such further relief as this Court deems just and proper.

Date: August 22, 2025

Respectfully Submitted,

Kwame Raoul
Attorney General of Illinois

*/s/ Dimitrios Karabetsos*
Dimitrios Karabetsos
Assistant Attorneys General
115 S. Lasalle St.
Chicago, IL 60603
312-814-3846
dimitrios.karabetsos@ilag.gov

## <u>CERTIFICATE OF SERVICE</u>

    The undersigned certifies that on August 22, 2025, he electronically filed the foregoing document with the Clerk of the Court for the Central District of Illinois by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

<u>/s/Dimitrios Karabetsos</u>
Dimitrios Karabetsos
